UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WAYNE GORDON                          CIVIL ACTION NO. 06-1389-P

VERSUS                                JUDGE HICKS

RICHARD STALDER, ET AL                MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Wayne Gordon ("Plaintiff") is a former inmate at the David Wade Correctional

Center.  Before Plaintiff was released from prison, he filed this civil action against several

corrections officials based on allegations that he did not receive proper medical treatment for

Hepatitis B.  Before the court is a Motion to Dismiss (Doc. 39) filed by all Defendants.  The

motion raises defenses including failure to exhaust administrative remedies, qualified

immunity and the Eleventh Amendment.

**Relevant Allegations**

When ruling on a motion to dismiss, a judge must accept as true all of the factual

allegations contained in the complaint.  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2000).

Accordingly, Plaintiff's allegations will be stated herein as if they were true.  Plaintiff was

incarcerated at Winn Correctional Center in 1999 when he tested positive for Hepatitis B.

When Plaintiff requested treatment, the Winn medical staff advised that the facility was not

equipped to treat the condition.  Plaintiff continued to complain and seek treatment until, in January 2002, he was transferred to David Wade.

Between February 6 and February 11, 2004, Plaintiff had persistent pain in his abdomen, back and side, as well as fever.  Plaintiff consulted an unnamed member of the David Wade medical staff, who surmised the pain was caused by a lack of calisthenics. Ibuprofen was dispensed, but it did not help.  A few days later, Plaintiff consulted "medical staff" and explained that the Ibuprofen had not relieved his pain.

Dr. Sandra Parker (a defendant) examined Plaintiff on February 24, 2004.  She told Plaintiff that his pain had nothing to do with Hepatitis, and she changed his medicine from Ibuprofen-600 to Ibuprofen-400 and muscle relaxers.  The medicine did not help, but Plaintiff sought a refill when his prescription expired on March 19, 2004.  The medicine was then changed to Ibuprofen-800.

Plaintiff wrote Dr. Parker in March 2004 and asked whether his pain could be caused by prostate cancer.  Plaintiff also advised that the Ibuprofen-800 was not relieving his pain. Dr. Parker responded by ensuring Plaintiff that he did not have prostate cancer.  Plaintiff wrote Dr. Parker again on April 3, 2004 to explain why he believed he had Hepatitis and to request proper treatment.  Dr. Parker did not respond.  Soon afterward, on April 27, 2004, Plaintiff filed the Administrative Remedy Procedure grievance that was designated DWCC-04-0511.  The grievance stated, in relevant part, as follows:

> It is presumed I am diagnosed with a liver ailment (Hepatitis-B) in which is a serious medical matter.  The medical chart

> affirmatively show I have repeatedly sought medical treatment
> but has been denied.  . . . In regards to said denial-atrocity of
> medical care, you have caused existing serious medical needs
> and conditions posing a substantial risk of serious future harm.

The grievance, as required by the prison ARP rules, was addressed to Warden Venetia Michael (a defendant).  Plaintiff had another grievance pending at that time.  Under the ARP rules, only one grievance may be within the system at a time.  If additional grievances are tendered, they are logged and set aside for submission after all earlier-filed grievances have been exhausted.  See Adult Administrative Procedures at Louisiana Administrative Code, Title 22, Part I, Section 325.

It was not until June 30, 2005 that screening officer Becky Moss (a defendant) notified Plaintiff that his April 2004 grievance request had been accepted and that a response would issue within 40 days.  Nurse Debbie Scriber (a defendant) prepared the first-step response.  She noted that Plaintiff had a positive Hepatitis B surface anti-body test in 1999.  Since then, he has had "numerous tests" to assess his liver function, and "all have been within normal limits."  Scriber noted that lab work had been scheduled for Plaintiff in April 2005, but Plaintiff refused to have blood drawn.  Plaintiff had also declined evaluation of a thyroid mass, saying he wanted to defer treatment until he was released from prison.  Scriber concluded that Plaintiff had been followed for his medical problems and that the physicians were in the best position to order his medical plan of care.  Plaintiff pursued step-two relief

by appealing to Secretary Stalder (a defendant), and Secretary Stalder's designee issued a decision that the medical staff at David Wade had adequately addressed all medical concerns.

Plaintiff's complaint does not stop at the point where he filed his grievance.  He continues to allege acts related to his medical care that occurred well after the grievance was filed.  He alleges that he sought treatment in May 2004 from someone identified as nurse Jeffery (not a defendant), who referred Plaintiff for an interview by Dr. Jane Tucker (a defendant).  Plaintiff did not see Dr. Tucker within five days, so he sought emergency treatment.  Nurse Odom (not a defendant) suggested that Plaintiff stop taking Tylenol for fever, and she said she would schedule an appointment with Dr. Tucker.  Plaintiff was interviewed by Dr. Tucker, who assured him that he did not have Hepatitis.  Dr. Tucker changed Plaintiff's Ibuprofen prescription, but it did not help.

Plaintiff sought treatment in June 2004, and Dr. Pamela Hearn (a defendant) examined Plaintiff and prescribed a calisthenics program.  Plaintiff saw Dr. Parker again in June and July of 2004.  Plaintiff continued to complain of Hepatitis, and Dr. Parker insisted that Plaintiff did not have Hepatitis.  Plaintiff alleges Drs. Parker, Tucker and Hearn "stated and has demonstrated plaintiff will not be treated for hepatitis as they alleges the illness do not exist despite the fact Defendant Scriber subsequently unveiled plaintiff have said illness."

Plaintiff also alleges that in March 2006 he spoke with Dr. Hearn about treatment.  Dr. Hearn allegedly told Plaintiff that the prison staff afforded mono-therapy and/or

Interferon only to Caucasian inmates who have Hepatitis.  Plaintiff complained that this was preferential medical treatment to the disadvantage of black inmates.

**Exhaustion of Administrative Remedies**

### A. General Requirement; Assessment on Rule 12(b)(6) Motion

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The statute requires proper exhaustion of administrative remedies in accordance with prison procedures. Woodford v. Ngo, 126 S.Ct. 2378 (2006). Defendants have raised the exhaustion defense in their motion to dismiss.

When ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.  Erickson,127 S.Ct. at 2200. For that reason, an affirmative defense is "generally not the proper subject of Rule 12(b)(6) motions." Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 n. 3 (5th Cir. 1997). The motion can prevail on the defense only if the grounds for dismissal "clearly appear on the face of the plaintiff's complaint." Id. And  prisoners need not "specifically plead or demonstrate exhaustion in their complaints" to avoid 12(b)(6) dismissal.  Jones v. Bock, 127 S.Ct. 910 (2007).

The exhaustion issue is more capable of potential resolution in this case than the ordinary case because Plaintiff did attach to his complaint and otherwise submit several

Case 5:06-cv-01389-SMH-MLH   Document 43   Filed 12/27/07   Page 6 of 14 PageID #:  304

documents related to his administrative efforts. "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). That rule permits consideration of an exhibit to a complaint in a Rule 12(b)(6) contest. Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007). However, Plaintiff submitted the documents pursuant to instructions in a complaint form and an order of the court that issued before the Jones decision, which held that the court may not force a prisoner to plead exhaustion. See also Carbe v. Lappin, 492 F.3d 325 (5th Cir. 2007)("a district court cannot by local rule sidestep Jones by requiring prisoners to affirmatively plead exhaustion").

Consistent with Jones, the court no longer orders prisoners to prove exhaustion at the pleading stage, but the complaint form long in use by area prisoners includes a request to attach exhaustion information. That form may eventually be amended by the district, but there will undoubtedly be many complaints filed in months (and perhaps years) to come that will employ the current complaint form that was widely distributed to area prisons and jails. It appears that the better practice in such cases, to avoid running afoul of Jones, is for the defendant(s) to assert the exhaustion defense by motion for summary judgment, supported by competent evidence of the prisoner's relevant ARP record. This will avoid reliance on documents submitted by the prisoner that Carbe says the court could not properly order the prisoner to file. If the prisoner files a complaint on a form that does not direct him to file proof of exhaustion, but he nonetheless voluntarily submits his ARP information, a Rule 12(b)(6) motion may be adequate to assert the exhaustion defense.

To avoid procedural problems in this case to the extent possible, Defendants' motion to dismiss is converted to a motion for summary judgment, and the ARP documents of record (which Defendants rely on and have not challenged as to authenticity) are deemed exhibits to the motion. Any party who wishes to offer other or competing summary judgment material may do so within the ten-day period for objections that follows this Report and Recommendation. That will satisfy the notice requirement of Fed. R. Civ. P. 56.

**B. Which Defendants?**

Defendants urge that Plaintiff's grievance did not name any particular Defendant and did not otherwise adequately identify any Defendant other than Dr. Parker.  The Supreme Court, in Jones, held that nothing in the PLRA imposes a "name all defendants" requirement. The level of detail necessary in a grievance to comply with the ARP exhaustion requirement is determined by the prison's requirements, and not the PLRA.  Jones, 127 S.Ct. at 922-23.

The relevant ARP rules provide that the inmate is to commence the process "by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought."  There is no requirement that any particular official be named in the grievance. The Fifth Circuit in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) held that a grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit."  Id. at 522.  That will sometimes require that the grievance identify individuals who are connected with a problem, but the grievance may also sufficiently identify a person even if it does not provide an actual name.  The Court

gave as an example a reference to "the guards in the shower room" on a certain date.  Id. 522-23.  The Fifth Circuit has continued to apply Johnson's "fair opportunity" standard after Jones v. Bock.  See Garcia-Comacho v. Maldonado, 2007 WL 2228623 (5th Cir. 2007).

Plaintiff's grievance about a general denial of medical treatment for Hepatitis provided administrators with a fair opportunity to address any problems Plaintiff had at that time with members of the medical department regarding that issue.  The grievance did not, however, contain any reason to investigate or attempt to resolve a dispute with Secretary Stalder, Warden Michael, Becky Moss (the screening officer) or Angie Huff.  Those Defendants had no direct involvement in the provision of medical care to Plaintiff.  His grievance is insufficient to have exhausted a claim against them, so those defendants are entitled to dismissal. Proper encouragement of compliance with the PLRA exhaustion requirement warrants the dismissal of these defendants with prejudice to Plaintiff's right to reassert the claims against them as a pauper. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1999).

The remaining defendants are Dr. Tucker, Dr. Hearn and Nurse Scriber.  It is arguable that only claims against Dr. Parker were exhausted because, according to the complaint, she was the only person who allegedly denied care prior to the grievance being filed.  Plaintiff's allegations against Dr. Hearn and Nurse Scriber relate to events that occurred after the grievance was filed.  But prison administrators who responded to the grievance did not limit the matter to events that happened before the 2004 grievance.  They included within their

discussion medical care that was being afforded in 2005, spoke of continuing care for the medical problems, and stated that "the doctors" are in the best position to order a plan of care.

In <u>Johnson</u>, an inmate complained that he was being subjected to continual assaults by other inmates because prison officials failed to protect him.  The Fifth Circuit held that the prisoner was not expected to file a new grievance after each assault or after each time period for filing a grievance during the entire time he was unprotected.  Had Plaintiff in this case attempted to file additional grievances, they would have been logged pursuant to the rules in the ARP that limit a prisoner to one pending grievance.  Accordingly, the court finds that Plaintiff's grievance was sufficient to exhaust his claims regarding ongoing denial of medical care for Hepatitis B against members of the medical staff, even if the events arose after the grievance was filed.

**C.  Which Claims?**

Plaintiff squarely presented in his grievance an assertion that he was repeatedly denied medical treatment that he sought for Hepatitis B.  Plaintiff's judicial complaint asserts that claim, but it also includes an assertion that Dr. Hearn told Plaintiff that certain treatments were afforded only to Caucasian inmates, which Plaintiff characterizes as preferential medical treatment over black inmates.  To the extent Plaintiff attempts to assert an Equal Protection claim based on this allegation, the claim was not exhausted.  A similar situation was presented in <u>Johnson</u>, where the inmate's grievances nowhere stated that he was

suffering racial discrimination and did not mention his race at all.  The Fifth Circuit concluded that the grievance did not give notice of a race-related problem so did not exhaust an Equal Protection claim.  <u>Johnson</u>, 385 F.3d at 518.  Accordingly, any Equal Protection claim should be dismissed.

**Qualified Immunity**

All Defendants assert the defense of qualified immunity, but the court need address only the claims against Dr. Hearn, Dr. Tucker and Nurse Scriber.[1]  Qualified immunity shields state officials from Section 1983 suits for damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  The court first determines whether the facts alleged (if true) would establish the violation of a constitutional right.  The court then asks whether the official's conduct was objectively unreasonable in light of the clearly established law at the time of the actions at issue.  <u>Stotter v. University of Texas</u>, ____ F.3d ___, 2007 WL 4171112, *7 (5th Cir. 2007).  Each defendant is entitled to individual consideration.  <u>Meadours v. Ermel</u>, 483 F.3d 417, 421-22 (5th Cir. 2007).

Plaintiff names Nurse Debbie Scriber as a defendant and describes her as the first-step respondent to his ARP grievance.  Doc. 1, p. 6.  Plaintiff next mentions Scriber when he

---

[1] Dr. Parker did not join the motion to dismiss, and she has not appeared in the suit. The effort to serve her with the summons provided by Plaintiff was returned with a notation that she no longer works at David Wade. Doc. 28. Plaintiff must submit current service information for Dr. Parker by **January 18, 2008**, so that the marshal may attempt service, or the claims against Dr. Parker will be subject to dismissal.

describes a prior lawsuit, 04-CV-2130, that was dismissed for failure to exhaust administrative remedies.  Plaintiff alleges that Scriber gave "contradictory information to what has been given by other defendants, plus she has surreptitiously given false information in an attempt to decimate plaintiff's suit (claims)."  pp. 13-14.  It is not clear what Plaintiff means by this assertion, and it is his obligation to plead specific facts to overcome the qualified immunity defense.  The court generously construed his grievance to include the exhaustion of all claims against the medical staff, which includes Nurse Scriber, but there are simply no allegations that Nurse Scriber personally denied any requests for medical care. The extent of her involvement appears to be her response to the grievance.  The assertion of that mere fact does not present an exhausted, constitutional claim.  All claims against Scriber should be dismissed.

Dr. Hearn and Dr. Tucker (along with Dr. Parker) are accused of not affording the proper examinations, diagnosis and treatment for Plaintiff.  Hearn and Tucker characterize the allegations against them as Plaintiff's complaint that he did not receive the diagnosis that he wanted or the treatment that he believed he needed, and they argue for dismissal because a difference of opinion about a medical condition or the appropriate treatment for the condition does not state an Eighth Amendment violation.  Hearn and Tucker are correct in that respect.  See Norton, 122 F.3d at 292.  But Plaintiff's allegations go farther.  He alleges that Tucker and Hearn, as well as Parker, refused treatment for Hepatitis and denied Plaintiff had Hepatitis even though, as observed by Nurse Scriber in the first-step response, Plaintiff

had tested positive in 1999.  The allegation of intentional denial of medical treatment for a known, serious health condition is adequate to overcome qualified immunity at this pleadings-review stage of the litigation.  Perhaps Hearn and Tucker can easily explain the relevant facts and the reasons for their actions, but the court is limited to Plaintiff's allegations at this point. Defendants Tucker and Hearn (and Parker, if she is served) will have to combat the allegations against them through more substantive means, such as a motion for summary judgment that is supported by their affidavits and the relevant medical records.

**Official Capacity Claims**

Plaintiff alleges that the Defendants are sued in their "individual, official, personal and/or private capacity; not in capacity as a state official."  That appears to be an assertion of a personal capacity claim, and there is no suggestion that Plaintiff is asserting an Ex Parte Young or other true official capacity claim.  Defendants nonetheless move for dismissal of any claims for monetary damages against a defendant in his or her official capacity. Although  it does not appear that Plaintiff is asserting any such claims, Defendants are entitled to dismissal of them.  Will v. Michigan Department of State Police, 109 S.Ct. 2304 (1989).  Plaintiff may, of course, obtain monetary damages against the Defendants in their individual capacities, for which there is no Eleventh Amendment immunity.  Hafer v. Melo, 112 S.Ct. 358 (1991).

**State Law Claims**

Defendants ask for dismissal of any state law claims on the grounds they are barred by the Eleventh Amendment under the rationale of <u>Hughes v. Savell</u>, 902 F.2d 376 (5th Cir. 1990).  That decision held that a Louisiana law negligence claim for failure to protect an inmate from attack by a fellow inmate is, under Louisiana law, actually a claim against the state rather than a claim against the individual corrections official.  The claims in this case are of a different nature and assert that the medical staff deliberately denied care for a known illness  which, if true, could mean their actions were not within the course and scope of their employment. Given the allegations of intentional misconduct and the absence of a more focused discussion of the Louisiana tort law that applies to these medical care claims, it is premature to dismiss any state law claims on a mere motion to dismiss.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 39)** be **granted in part** by: (1) dismissing, with prejudice to refiling in forma pauperis, all claims against Richard Stalder, Venetia Michael, Angie Huff and Becky Moss; (2) dismissing with prejudice all claims against Debbie Scriber; and (3) dismissing for lack of subject matter jurisdiction all claims against any Defendant in his or her official capacity for money damages. It is recommended that the motion be **denied in all other respects**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of December, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE